2026 IL App (1st) 250710-U

Order filed: January 14, 2026

FIRST DISTRICT
THIRD DIVISION

No. 1-25-0710

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| KATHERINE YAKOWENKO, Executor of the Estate of Marie Yakowenko, <br><br> Plaintiff and Counterdefendant-Appellant, <br><br> v. <br><br> LAWRENCE YAKOWENKO, PAUL YAKOWENKO, DAVID YAKOWENKO, UNKNOWN OWNERS, and NON-RECORD CLAIMANTS, <br><br> Defendants. <br><br> (Lawrence Yakowenko, Paul Yakowenko, and David Yakowenko, <br><br> Defendants and Counterplaintiffs-Appellees). | Appeal from the Circuit Court of Cook County. <br><br> No. 2020 P 3433 <br><br> Honorable Carolyn J. Gallagher, Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: Entry of summary judgment in favor of defendants is affirmed, where plaintiff could not establish either her claim of adverse possession or the applicability of the equitable doctrine of *laches*.

¶ 2    Plaintiff and counterdefendant-appellant, Katherine Yakowenko, executor of the estate of

Marie Yakowenko, appeals from the summary judgment entered in favor of defendants and

counterplaintiffs-appellees, Lawrence Yakowenko, Paul Yakowenko, and David Yakowenko

(collectively, the named defendants), and unknown owners and non-record claimants, as to the estate's claims with respect to a residential property. For the following reasons, we affirm.

¶ 3    Katherine, named as executor in her aunt Marie's will, initiated this litigation on July 9, 2020, when she filed a petition in the circuit court to probate the estate and will of Marie, who died on February 2, 2020. An order naming Katherine the independent executor of Marie's estate was entered on September 17, 2020.

¶ 4    As relevant to this appeal, on September 29, 2020, Katherine initiated a supplemental proceeding in this matter by filing a single-count complaint to quiet title, seeking a declaration that the estate is the exclusive and fee simple titleholder to a residential real property located in Chicago, Illinois. Therein, Katherine generally alleged that Marie obtained title to the property in 1966 and lived there until her death in 2020. However, a series of events over the years had created a dispute over the true ownership of the property.

¶ 5    Specifically, the complaint alleged that in 2000, Marie intended to create a life estate for herself in the property and otherwise transfer the property to her brother, Walter Yakowenko. Instead, however, Marie executed a quitclaim deed transferring her entire interest in the property to Walter on June 22, 2000. Walter died in 2006, leaving the property to his surviving spouse, Laura Yakowenko, in a will that has never been probated. In turn, Laura later informed her daughter, Katherine, that she wanted the property transferred back to Marie, as that was the original intent of the 2000 transaction. As such, on June 15, 2007, acting as power of attorney for Laura, Katherine executed a quitclaim deed transferring the property to Marie. The quitclaim deed was recorded in the office of the Cook County Recorder of Deeds on August 28, 2007. The complaint alleged that Marie's estate was the fee simple titleholder of the property pursuant to this deed.

¶ 6 However, Laura died in 2007 (indeed, on June 15, 2007), leaving all her assets to Katherine, Lawrence, Paul and David in her still unprobated will, creating a potential cloud on the title to the property. The complaint alleged that defendants "claim title to the described real Property adverse to Petitioner under the last will and testament of Laura, arguing, on information and belief, that the Property was not properly transferred to Marie on June 15, 2007." The complaint further contended that "[a]s legal owner of the Property, and as the Executor of the Estate of Marie, Petitioner seeks a declaration that the title to the Property is vested in the Estate of Marie Yakowenko, and that Respondents have no estate, right, title, or interest in the subject property and that Respondents be forever enjoined from asserting any estate, right, title, or interest in the Property." On October 20, 2020, an agreed order was entered allowing the property to be sold. The property was subsequently sold, and the proceeds are being held in escrow pending the outcome of this litigation.

¶ 7 On December 2, 2020, the named defendants filed an answer denying the material allegations of the complaint and two counterclaims, including a claim for declaratory judgment and a claim for breach of fiduciary duty. The counterclaim for breach of fiduciary duty was subsequently dismissed.

¶ 8 The operative amended complaint was subsequently filed on February 9, 2021, adding a second claim for adverse possession under section 13-109 of the Code of Civil Procedure (Code). 735 ILCS 5/13-109 (West 2020). The named defendants filed their answer to the amended complaint, and Katherine thereafter filed an answer and affirmative defenses to the named defendants' remaining declaratory judgment counterclaim. The affirmative defenses included claims of: (1) adverse possession under section 13-107 of the Code (735 ILCS 5/13-107 (West 2020)), (2) adverse possession under section 13-109 of the Code (735 ILCS 5/13-109 (West

2020)), and (3) *laches*. An answer to the affirmative defenses was filed by the named defendants on September 27, 2022.

¶ 9    On January 6, 2023, Katherine filed a motion for summary judgment on two of her affirmative defenses: (1) adverse possession under section 13-109 of the Code, and (2) *laches*. After the motion was briefed and argued, summary judgment was denied in an order entered on November 1, 2023. In that order, the circuit court also discussed and rejected summary judgment on Katherine's affirmative defense of adverse possession under section 13-107 of the Code. Katherine filed a motion to reconsider this ruling, which was denied in an order entered on December 8, 2023.

¶ 10    On November 21, 2024, the named defendants filed a motion for summary judgment on their declaratory judgment counterclaim, as well as on Katherine's affirmative defenses. That motion was briefed and argued, and summary judgment was entered in favor of the named defendants in an order entered on March 21, 2025.

¶ 11    On April 8, 2025, Katherine filed a motion seeking to clarify the March 21, 2025, order. Therein, Katherine contended that the order did not:

> "expressly state whether all issues before the Court are disposed of. Accordingly, Katherine seeks clarification of this Honorable Court's March 21st Order to determine whether or not it intended to fully dispose of all issues before the Court. Alternatively, if the March 21st Order was not intended to fully dispose of all issues before the Court, Katherine seeks modification of the March 21st Order to include language pursuant to Illinois Supreme Court Rule 304(a) finding that there is no just reason to delay appeal of the March 21st Order."

- 4 -

¶ 12    On April 15, 2025, the circuit court entered an order denying this motion, noting that under Illinois Supreme Court Rule 304(b)(1) (eff. March 8, 2016), a judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party is appealable without the finding required for appeals under Rule 304(a). The circuit court further concluded that the March 21, 2025, order was "entered in the administration of the decedent's estate, and it finally determined the rights of the beneficiaries with regard to subject real estate. It follows that the appealability of the Order is governed by Rule 304(b)(1). *** Rule 304(a) language is not required to appeal the Order and therefore will not be provided." Katherine filed a timely notice of appeal on April 18, 2025.

¶ 13    Before continuing further, we must first address the scope of our review. In her notice of appeal, Katherine specifically appeals from the March 21, 2025, order granting the named defendants' motion for summary judgment. As the circuit court correctly determined, this is proper under Illinois Supreme Court Rule 304(b)(1) (eff. March 8, 2016), which allows for interlocutory appeals from a "judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." See *In re Estate of Devey*, 239 Ill. App. 3d 630, 633 (1993) ("Rule 304(b)(1) promotes efficiency and provides certainty by allowing appeal as to some issues as those issues are resolved during the lengthy procedure of estate administration."). Here, the March 21, 2025, order finally determined the rights of the parties with respect to the property, even though other issues remained pending with respect to probating the estate and will of Marie.

¶ 14    However, Katherine's notice of appeal also purports to appeal from the previous denial of her own prior motion for summary judgment and the order denying her motion to reconsider that denial. This is improper. As our supreme court has recognized:

"Ordinarily, the denial of summary judgment is not appealable, because such an order is interlocutory in nature. However, we have recognized an exception to this rule in certain circumstances, as when the parties have filed cross-motions for summary judgment and one party's motion is granted and the other party's denied. Because the order disposes of all issues in the case, review of the denial of summary judgment may be had." *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 119.

¶ 15    Here, the exception to the general rule that the denial of summary judgment is not appealable is not applicable. First, the parties did not file cross-motions for summary judgment, where Katherine's motion for summary judgment was filed nearly two years before and ruled upon over a year before the named defendants' motion for summary judgment was ever filed. Second, as discussed above, while the order granting the named defendants' motion for summary judgment did constitute a final, appealable order under Rule 304(b)(1) as to the rights of the parties with respect to the property, it did not dispose of all issues in this case with respect to probating the estate and will of Marie. As such, the exception does not apply, and we do not have jurisdiction to review the denial of Katherine's motion for summary judgment and the order denying the motion to reconsider that denial.

¶ 16    Additionally, we note that with respect to the March 21, 2025, order granting summary judgment in favor of the named defendants, on appeal Katherine specifically challenges only that portion of the order which granted summary judgment as to: (1) count II of Katherine's amended complaint and her second affirmative defense to the declaratory judgment counterclaim, both of which involve Katherine's assertion of adverse possession under section 13-109 of the Code, and (2) Katherine's third affirmative defense, which invoked the defense of *laches*. We therefore limit our analysis to those specific issues on appeal, and to those specific issues we now turn. See Ill. S.

Ct. R 341(h)(7) (eff. Oct. 1, 2020) (Appellant's brief shall include an argument containing the appellant's contentions, the reasons therefor, citation of the authorities, and the pages of the record relied on, and points not argued in opening appellate brief "are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

¶ 17    Summary judgment is properly granted where the pleadings, depositions, and admissions on file, together with any affidavits, indicate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2024). The court must examine the evidence in the light most favorable to the nonmoving party (*Pavlik v. Wal–Mart Stores, Inc*., 323 Ill. App. 3d 1060, 1063 (2001)), and must construe the material strictly against the movant and liberally in favor of the nonmovant (*Espinoza v. Elgin, Joliet and Eastern Railway Compan*y, 165 Ill. 2d 107, 113 (1995)). Although a drastic means of disposing of litigation, summary judgment is nonetheless an appropriate measure to expeditiously dispose of a suit when the moving party's right to the judgment is clear and free from doubt. *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601 (2009).

¶ 18    An order granting a motion for summary judgment is subject to a *de novo* standard of review. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). As such, we perform the same analysis that a circuit court would and give no deference to the circuit court's conclusions or specific rationale. *Milevski v. Ingalls Memorial Hospital*, 2018 IL App (1st) 172898, ¶ 26. This court may, therefore, affirm the judgment of the circuit court on any basis that appears in the record, regardless of whether the circuit court relied upon that basis or whether the circuit court's reasoning was correct. *Retirement Plan for Chicago Transit Authority Employees v. Chicago Transit Authority*, 2020 IL App (1st) 182510, ¶ 34.

¶ 19    We first address the challenge to summary judgment awarded to the named defendants on count II of Katherine's amended complaint and her second affirmative defense to the declaratory judgment counterclaim, both of which involve Katherine's assertion of adverse possession under section 13-109 of the Code. That section provides: "Except as provided in Section 13-109.1, every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who for 7 successive years continues in such possession, and also, during such time, pays all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of such lands or tenements, to the extent and according to the purport of his or her paper title." 735 ILCS 5/13-109 (West 2020). "To prevail under section 13–109, a litigant must prove (1) claim and color of title, made in good faith; (2) payment of taxes for seven successive years; and (3) continuous, uninterrupted, hostile possession for the statutory period adverse to the opponent." *Malone v. Smith*, 355 Ill. App. 3d 812, 816 (2005) (quoting *Harlan v. Douthit*, 379 Ill. 15, 21 (1942)).

¶ 20    While the circuit court did not address the good faith requirement in its order, we find this requirement lacking here and the lack of claim and color of title, made in good faith, to be dispositive of this issue. "The words 'good faith' must receive a practical, commonsense construction*" Dotson ex rel. Dotson v. Former Shareholders of Abraham Lincoln Land & Cattle Co., Inc.*, 332 Ill. App. 3d 846, 855 (2002); *Bergesen v. Clauss*, 15 Ill. 2d 337, 343 (1958) (good faith "depends upon the purpose with which the deed is obtained, and the reliance placed upon the claim and the color. A party receiving color of title, knowing it to be worthless, or in fraud of the owner's rights, although he holds the color and asserts the claim, cannot render it availing, because of the want of good faith.")

¶ 21    Furthermore, Illinois law is clear that:

"To render a deed operative to pass title there must be not only a delivery of the deed by the grantor but also an acceptance thereof by the grantee. The acceptance of the conveyance by the grantee is as essential to the passing of the title as the delivery by the grantor, and where the acceptance is not proved and the facts do not justify the presumption of law that the grantee has accepted, the title does not pass. *** The acceptance of a deed must take place before the death of the grantor." (Internal quotations and citations omitted.) *Matter of Estate of Shedrick*, 122 Ill. App. 3d 861, 864-65 (1984).

Additionally, where a deed is not accepted and recorded during the lifetime of the grantor, the subsequent recording of such a deed is of no legal effect. *Redmond v. Gillis*, 346 Ill. 223, 231 (1931).

¶ 22    Here, it is undisputed that while the June 15, 2007, deed transferring the property from Laura to Marie was executed before Laura died on that same day, that deed was not delivered to and accepted by Marie until after Laura died, as Katherine did not return to Chicago with the executed deed until days later. Katherine's own undisputed deposition testimony established these facts. The deed was not then recorded until August 28, 2007. Under these facts and the law above, it is impossible for Marie to have acquired and recorded the deed to the property in good faith where she knowingly did so after Laura's death, and she cannot therefore take advantage of section 13-109. As such, summary judgment was properly awarded to the named defendants on count II of Katherine's amended complaint and her second affirmative defense to the declaratory judgment counterclaim.

¶ 23    We now turn to Katherine's challenge to the summary judgment awarded to the named defendants on her third affirmative defense, which invoked the defense of *laches*. The law on this issue has been summarized as follows:

"*Laches* is an equitable doctrine that precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. *Laches* is an affirmative defense asserted against a party who has knowingly slept upon his rights and acquiesced for a great length of time, and its existence depends on whether, under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did. *Laches* turns on the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties. The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party.

Two elements are necessary for the application of *laches*: (1) lack of due diligence by the party asserting the claim and (2) prejudice to the opposing party. Whether *laches* applies depends on the facts of each case." (Internal quotations and citations omitted.) *Noland v. Mendoza*, 2022 IL 127239, ¶¶ 32-33.

The applicability of *laches* may be decided on a motion for summary judgment. *Hauser v. Chicago Park Dist.*, 263 Ill. App. 3d 39, 42 (1994).

¶ 24       First, to the extent that the relevant timeframe for calculating any unreasonable delay is to be measured from the time Katherine filed the complaint to quiet title in this matter to the time the named defendants filed their answer and counterclaims, we agree with the circuit court that the delay of mere months cannot be said to amount to a lack of due diligence justifying the defense of *laches*. However, even assuming Katherine is correct that the relevant timeframe for calculating any unreasonable delay is from the time the 2007 deed was executed or recorded to the time that

the declaratory judgment counterclaim was filed in 2020, we find that Katherine has not plead or shown any prejudice resulting from that delay.

¶ 25    First, in her affirmative defense, Katherine specifically and solely contends that prejudice resulted from the delay in bringing the counterclaim because: "Marie incurred all of the expenses and costs associated with her believed ownership of the Property, including, but not limited to, property taxes, maintenance, and insurance, all of which she believed to have been incurred and paid for the benefit of herself and her estate." As noted above, the law requires that any prejudice result from an "inequity founded upon some change in the condition or relation of the property and parties." *Noland*, 2022 IL 127239, ¶¶ 32-33. In this matter, it is undisputed that Marie always intended to live on the property during her lifetime and pay the expenses related thereto under any ownership regime. There is therefore no "change in the condition or relation of the property and parties" in this regard that can be said to result from any unreasonable delay in filing the declaratory judgment counterclaim.

¶ 26    Additionally, it has been recognized that no prejudice can result if the party invokes *laches* as to a counterclaim in a property dispute, but that party's own claims to the property are rejected by the court. *Payne v. Williams*, 91 Ill. App. 3d 336, 346 (1980). That is the situation presented here, for the reasons discussed above.

¶ 27    Finally, we reject Katherine's contention that she can establish prejudice on the basis that the delay has caused her to be without critical witnesses to defend against the counterclaim, where Marie and Laura have both died and their state of mind with respect to the various transactions cannot now be ascertained. See *Pyle v. Ferrell*, 12 Ill. 2d 547, 555 (1958) ("*laches* is particularly applicable where the difficulty of doing entire justice arises through the death of parties to the transaction complained of"). However, for the reasons stated above, proper title to the property

can be ascertained irrespective of the intent of Laura or Marie, and therefore no such prejudice can result from any possible unreasonable delay. Therefore, we conclude that summary judgment was also properly awarded to the named defendants on Katherine's third affirmative defense.

¶ 28 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 29 Affirmed.